PUIG ET AL. *v.* THE REGISTRAR OF PROPERTY.

APPEAL from a decision of the Registrar of Property
of Caguas.

No. 30.—Decided June 24, 1909.

PROCEEDINGS TO ESTABLISH DOMINION TITLE—CONFUSION IN THE DETERMINA-
TION OF COOWNERSHIPS.—In order to record a coownership it is necessary to
define it by stating in the title the total value of the real property and the
interest therein of each participant, defined, either by a specific figure or
amount, or by a common or a decimal fraction; and a judgment rendered
in proceedings to establish dominion title which does not contain these requi-
sites is not recordable.

ID.—REQUISITES OF THE RECORD OF A COOWNERSHIP.—In accordance with the de-
cision of the General Board of Registrars of Spain of June 6, 1894, the pro-
vision of section nine, subdivision two, of the Mortgage Law, in so far as
it requires that the extent of the interest recorded be determined, impera-
tively requires with respect to a coownership that the record thereof show
the aliquot share of each participant with such clearness that a third person
may recognize it without question.

DENIAL OF RECORD—SALE BY A PERSON WHO HAS NOT RECORDED HIS TITLE IN
THE REGISTRY.—When a property, the object of a sale, is not recorded in the
registry in the name of the vendor, the purchaser cannot record his title until
this requisite has been complied with.

The facts are stated in the opinion.

*Mr. Arce* for appellant.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

A certified copy of a judgment, rendered by the Judge of
the District Court of Humacao, on April 9, 1907, was pre-
sented in the Registry of Property of Caguas, in which are
described, under letters A, B and C, two rural estates called
"Bairoa" and "Polo," and an urban estate, with their bound-
aries, area and situation, the ownership whereof is declared
in favor of a number of persons mentioned in the judgment,
and the admission to record of such right, in favor of such
persons, is ordered.

There was no difficulty whatsoever as to the record of the
ownership, as directed in the judgment, with respect to the

rural estate called "Polo," and the urban estate. These were recorded.

But in the copy of the judgment, presented as a title, it is said, with respect to the other rural estate called "Bairoa":

"The rural estate called 'Bairoa' consisting, as has been said, of 169.68 *cuerdas* of land, described under paragraph A, was acquired by the petitioner in the following manner: 102.55 undivided *cuerdas* of said estate by fifth parts—that is to say, equally by intestate inheritance from their deceased father, Gerardo Puig y Auger, by his five legitimate children named José Puig Morales, of the first marriage, and of the second, Carmen Puig Polo, Isabel Puig Polo, María Mercedes Dolores Teresa Puig Polo, and María Ramona Dolores Rafaela Puig Polo, of which 102.55 cuerdas of land the predecessor in interest, Gerardo Puig Auger, contributed to his second marriage 78.75 *cuerdas* which he had acquired at the time of the dissolution of the agricultural firm, in Caguas, of which he formed part in conjunction with his deceased mother, Carmen Auger, his brother, Miguel Puig, and Gerardo Marti, who has been represented by his only heir, Gerardo Marti y Puig, and the remaining 10.10 *cuerdas,* which he also contributed to the second marriage, he having acquired them by inheritance from his said deceăsed mother; another 47.13 *cuerdas,* undivided, of the same estate, in fourth parts or in equal shares, by intestate inheritance from his deceased mother, Manuela Polo y Jiménez, in favor of her said four legitimate daughters had by the second marriage with Gerardo Puig y Auger, namely, Carmen, Isabela, María Mercedes Dolores Teresa, and María Dolores Ramona Rafaela Puig y Polo, derived from the earnings of the conjugal partnership, and the remainder, of 20 undivided *cuerdas* of the same estate, was acquired by the son of the first marriage, José Puig Morales, by inheritance from his deceased mother, derived from her acquets and gains during the first marriage of the deceased, Gerardo Puig Auger."

The Registrar of Property of Caguas refused the record of this estate, in a decision which he placed at the foot of the deed, the pertinent part whereof reads as follows:

"The record of the foregoing document is not admitted with regard to the estate called 'Bairoa,' consisting of 169.68 *cuerdas,* on account of the following incurable defect: That the decision, in which

the ownership is so declared, is so confusing in determining the interest in said estate of José Puig Morales, Carmen, Isabel, María Mercedes Dolores Teresa, and María Ramona Dolores Rafaela Puig y Polo, that it is not possible to determine the interest to be recorded in favor of each of the participants, and because, in the record of undivided property, the exact portion of each interest must be clearly stated by means of two data: The total value and the interest thereon of each participant, determined either by a fixed amount or by a common or decimal fraction, agreeably to the second requirement for every record, under article nine of the Mortgage Law, and in accordance with the decisions of the Directory of Registries of June 26 and August 18, 1894; and in lieu of such record, a cautionary notice has been entered, to have effect for a period of 120 days, with reference to the said estate, at folio 247 of volume 27 of this *ayuntamiento,* estate No. 1386, record letter A."

As a matter of fact, the judgment, with respect to the Bairoa estate, is exceedingly confusing.

This estate consists of 169.68 *cuerdas,* and it appears that in only 102.55 *cuerdas* have the five participants named in the judgment equal fifth interests.

In 47.13 *cuerdas,* each of the four participants have only a quarter interest each.

And the remaining 20 *cuerdas* belong to José Puig Morales, who also has a fifth interest in the 102.55 *cuerdas.*

Now then, what specific and clear interest has each participant in the ownership of the Bairoa estate, consisting of 169.68 *cuerdas?* It is not shown in the title which was presented, which is the judgment of the court declaring the ownership.

This title cannot be recorded in the registry by stating that each participant has a fifth interest in 102.55 *cuerdas,* that four of these participants have a quarter interest each in 47.13 *cuerdas,* and that 20 *cuerdas* belong to one of the participants, who also has a fifth interest in the tract consisting of 102.55 *cuerdas.* This would be absolutely unintelligible.

It can, indeed, be stated in the registry that such a participant has an eighth interest, another a tenth interest, etc., etc.,

in the entire estate recorded, because while the area of an estate is determined by its size and boundaries, that of an undivided interest is determined only by these two data: The total value of the real property and the interest therein of each participant, defined either by a specific figure or amount, or by a common or a decimal fraction.

In the decision of the Directory of Registries of June 6, 1894, the doctrine is established that the provisions of subdivision two of article nine of the Mortgage Law, in so far as they require that the extent of the interest recorded be stated, imperatively require, with respect to coownership, that the record thereof show the aliquot share of each participant with such clearness that a third person may recognize it without question.

The registrar of property, whose duty it is to record in his books only what the documents contain, is not authorized to make arithmetical calculations, which at all events would be a matter left to the third person desirous of entering into a contract with the participants in the ownership to which the title presented here refers, and it has already been said, that with reference to the extent of the rights recorded, the law does not admit of indeterminate statements or vagueness, the deplorable consequence of which the registrar of property is called on to avoid and prevent.

So that in view of the said article of the Mortgage Law, the decisions of the Directory of Registries of June 6 and August 18, 1894, and the title which the registrar of Caguas had before him, there is no doubt of the fact that he is perfectly right.

A deed of sale executed by four of the participants, referred to in the foregoing judgment, in favor of José del C. Jiménez, of July 24, 1908, was also presented in the registry of Caguas, as well as another deed of sale, executed by the other participant, in favor of the same purchaser, José del C. Jiménez.

By these deeds a number of estates are conveyed in sale, including the rural estate called "Bairoa," and the registrar denies the admission to record, because said estate is not recorded in favor of the vendors, nor of any other person.

These denials are an inveitable consequence of the first one which refers to the judgment declaring the ownership.

For the reasons above stated, the Estate of Bairoa was not recorded under said title, and it is evident that, subsequently, upon selling said estate, it is found not to be recorded in the registry, and the registrar, in refusing to record it, complied with the provisions of article 20 of the Mortgage Law, which makes him liable for any damage he may cause a third person through failure to observe it.

In view of the foregoing reasons, the three decisions of the registrar of property, of March 15, 1909, refusing admission to record, from which an appeal was taken by José Puig Morales and another, should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary and del Toro concurred.

Mr. Justice Wolf did not take part in the decision of this case.